UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY S. HICKMAN,

    Plaintiff,

    v().    CAUSE NO. 3:24-CV-697-HAB-ALT

STATE OF INDIANA, et al.,

    Defendants.

OPINION AND ORDER

Anthony S. Hickman, a prisoner without a lawyer, filed a complaint against fourteen defendants alleging that his constitutional rights were violated when he was electrocuted after he touched a light switch in his room and was denied medical treatment for his injuries. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Hickman alleges that, on the evening of July 14, 2024, while he was housed in Westville Correctional Facility's Level 2 complex, in area C1/N2/Room 5, Officer Finney and Officer Nelson shouted, "Count time everyone on the wall." ECF 2 at 3. To comply with the officers' directive, Hickman approached the doorway of his room and

reached for the light switch that was hanging from the hole in the wall in his room with bare, exposed, and live wires. *Id*. As he touched the switch, he was electrocuted and could not move. *Id*. When Hickman was able to move again, he felt short of breathe, was shaking, and became dizzy. *Id*. at 3-4. He then began to sweat profusely, lost consciousness, and collapsed on the concrete floor. *Id*. at 4. Hickman injured his knee, twisted his hip and lower back, and snapped his head and neck before striking the concrete floor. *Id*. He also lost control of his bowels. *Id*. Hickman seeks monetary damages, alleging he was subjected to unsafe conditions of confinement because of the bare, live wires hanging out of the light switch in his room. *Id*. at 14.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

2

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Hickman has sued Governor Eric J. Holcomb, Indiana Department of Correction ("IDOC") Commissioner Christina Reagle, and Warden Jason Smiley for subjecting him to unsafe conditions at Westville. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and high-ranking officials cannot be held liable for damages simply because they have supervisory authority or oversee operations at the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). Instead, they must have some personal involvement. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) (discussing standard for supervisory liability under § 1983). Because there are no allegations in the complaint from which the court can plausibly infer that these defendants personally knew about the condition of the light switch in Hickman's room, he may not proceed against them.[1]

---

[1] While Hickman has named Governor Holcomb and IDOC Commissioner Reagle as defendants in this case, he has not mentioned them in the body of his complaint.

3

Hickman has also sued the State of Indiana, asserting that it had a duty to provide him with a safe, humane, and livable place to serve his sentence. However, the Eleventh Amendment provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Burrus v. State Lottery Commn. of Ind.*, 546 F.3d 417, 419–20 (7th Cir. 2008) (internal quotation marks and citation omitted). "In addition, the Supreme Court has held that state agencies, as arms of the state, are immune from suit under the Eleventh Amendment." *Id.* (citations omitted); *see also de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019). Thus, Hickman may not proceed against the State of Indiana.

Hickman next speculates that Officer Finney and Officer Nelson witnessed the incident on the prison's camera system but did not come to his aid or ask anyone else to help him. ECF 2 at 4. Hickman asserts other offenders saw him fall down on the floor and one offender housed across the hall from him helped him up. *Id*. He contends that Officer Finney and Officer Nelson ignored the incident and walked past him. *Id*. Shortly after the incident, Hickman entered the officers' station and reported to Sgt. Thompson and Officer Nelson that he had been electrocuted and fallen. *Id*. at 5. Officer Nelson told Hickman, "No you were not electrocuted now get out of here." *Id*. He asserts Officer Nelson and Sgt. Thompson did not get him medical care or log the incident. *Id*.

On July 15, 2024, when Officer Walker[2] began his shift, Hickman told Officer Walker he had been electrocuted and fell on the floor. *Id*. Officer Walker reported the

---

[2] Hickman has not named Officer Walker as a defendant in this case.

4

incident to Lt. Nash and attempted to arrange for Hickman to be seen by medical staff. *Id*. The following day, on July 16, 2024, Officer Walker contacted Lt. Nash again and Lt. Nash instructed Officer Walker to send Hickman to the medical unit. *Id*. Hickman asserts when he was on his way to the medical unit, Lt. Nash approached him and instructed him to go to the medication room. *Id*. Once inside the medication room, E.C. Nurse Hale, who was speaking to an unknown medical person on the phone, asked Hickman to describe what had happened to him. *Id*. E.C. Nurse Hale relayed the information to the person on the phone, who said, "If [Hickman] can remember all that" then he should "go back to the dorm and fill out a sick call slip." *Id*. Hickman returned to his dorm where Officer Walker told Hickman he would let Lt. Nash know about the situation. *Id*. He also gave Hickman a grievance form to fill out. *Id*.

The following day, on July 17, 2024, when Officer Finney returned to work, Hickman spoke with her about her actions in ignoring his report that he had been electrocuted and fell. *Id*. at 5-6. She told him she did not think the incident was serious, but she would arrange to have Hickman seen by the medical staff at 2:55 p.m. that day. *Id*. at 6. However, he did not end up being treated that day. *Id*. at 6. Officer Finney also notified Sgt. Manns, who told her to note the July 14, 2024, incident in the logbook. *Id*. On July 18, 2024, Officer Finney once again contacted Sgt. Manns about Hickman's situation. *Id*. Sgt. Manns arranged to have Hickman seen by medical staff at 11:00 a.m. that day, but he was never seen. *Id*. On July 19, 2024, medical staff saw Hickman, took his vital signs, and prescribed 500 milligram Tylenol tablets for pain in his left knee, hip, and lower back. *Id*. He was told x-rays had been scheduled but he did not have x-rays of

5

his leg or back until thirteen days after the incident. *Id*. at 6, 10. Furthermore, his head and eyes were not checked and he was not evaluated to determine if he had a concussion. *Id*. at 6.

During the second week of August 2024, Hickman met with Grievance Specialist Shannon Smith, who gave him a medical pass. *Id*. at 10. Hickman told her that he had not received appropriate medical care following the July 14, 2024, incident. *Id*. She provided him with a prescription for 500 milligram Naproxen tablets, and told him a health care professional had submitted a referral for him to see a doctor. *Id*. Hickman seeks monetary damages for injuries to his left knee, hip, back, neck, and head from the July 14, 2024, incident. *Id*. at 14.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer,* 511 U.S. at 834. Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013

(7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." (citation and quotation marks omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Because there is no one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Persisting with a course of treatment known to be ineffective can amount to deliberate indifference. *Id.* "Mere negligence will not suffice, and deliberate indifference is not coextensive with medical malpractice." *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024).

Hickman has sued Officer Nelson, Officer Finley, Sgt. Thompson, Lt. Nash, E.C. Nurse Hale, an unknown medical person who spoke with E.C. Nurse Hale, Sgt. Manns, and Medical Director Bridegroom asserting they were deliberately indifferent to his serious medical needs after he was electrocuted and fell on July 14, 2024. He asserts he did not receive medical care for his injuries to his left knee, hip, back, neck, and head until July 19, 2024, which was five days after the incident.

To the extent Hickman asserts that Officer Nelson, Officer Finney, and Sgt. Thompson were deliberately indifferent to his serious medical needs immediately following the incident on July 14, 2024, he has not stated claims against these officers.

7

While Hickman speculates Officer Nelson and Officer Finney witnessed the incident on the prison's camera system, he has not alleged facts from which it can be plausibly inferred that Officer Nelson or Officer Finney knew he had a serious medical need and were deliberately indifferent to that need. Nor has Hickman alleged facts that Sgt. Thompson was deliberately indifferent to any serious medical need stemming from the incident. To the extent Hickman asserts that from July 15, 2024 to July 18, 2024, Lt. Nash, E.C. Nurse Hale, an unknown medical person who spoke with E.C. Nurse Hale, and Sgt. Manns were deliberately indifferent to his serious medical needs, he has not stated claims against these defendants. Here, he details the steps these defendants took in contacting the medical unit and reporting the incident. Their actions do not amount to deliberate indifference. Furthermore, to the extent he has sued Medical Director Bridegroom, he has not alleged she had any personal involvement in the incident or even knew about it. *See Purdue Univ.*, 928 F.3d at 664.

Hickman has also sued Grievance Specialist Shannon Smith. He asserts she failed to acknowledge his July 14, 2024, grievance or respond to his inquiry about the status of his grievance, which hindered his ability to exhaust his administrative remedies. ECF 2 at 6-7. To the extent Hickman asserts that Grievance Specialist Smith's actions violated IDOC policy, Section 1983 allows a plaintiff to sue for a violation of his federal rights, not of IDOC policies. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (claim under § 1983 requires that plaintiff was deprived of a federal right by a person acting under color of state law). A violation of IDOC policy alone cannot form the basis for a constitutional claim. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law,

8

not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws"). Moreover, Hickman has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed against Grievance Specialist Smith.

As a final matter, Hickman has sued Capt. Lee. ECF 2 at 7. Hickman asserts that, at some point, he asked Capt. Lee why Grievance Specialist Smith had not responded to his grievance. *Id*. Capt. Lee responded to his inquiry stating he had spoken to Grievance Specialist Smith and "she knows somebody wants a[n] answer and she is out of time." *Id*. Because the court is unable to discern why Hickman is suing Capt. Lee, he cannot proceed against him.

This complaint does not state a claim for which relief can be granted. If Hickman believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he must submit a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which the clerk will be directed to send him. He needs

9

to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DIRECTS the clerk to place this cause number on a blank Prisoner Complaint form and send it to Anthony S. Hickman;

(2) GRANTS Anthony S. Hickman until **October 25, 2025**, to file an amended complaint; and

(3) CAUTIONS Anthony S. Hickman that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on September 26, 2025.

s/ Holly A. Brady  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT